UNITED STATES DISTRICT COURT<br>FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| ) | Criminal No.: 05-190 (RBW) |
| v. ) | |
| ) | |
| KENNETH McDERMON ) | |
| ) | |
| ) | |

## DEFENDANT'S SENTENCING MEMORANDUM

Kenneth McDermon, through undersigned counsel, respectfully submits the following memorandum in aid of sentencing.

**Procedural History**

Mr. McDermon is before the Court pending sentencing after he entered a guilty plea to three counts of a nine count indictment. On July 27, 2005 Mr. McDermon entered a plea to one count of violating 18 U.S.C. § 922(g)(1) (Unlawful Possession of a Firearm by a Person convicted of a Crime Punishable by Imprisonment for a Term Exceeding one year), one count of violating 18 U.S.C. § 922(h) (Unlawful Transfer of a Firearm), and one count of violating 21 U.S.C. 841(a)(1) and (b)(1) ( C) (Unlawful Distribution of a Controlled Substance) Pursuant to the convictions Mr. McDermon faces a maximum sentence of ten years of incarceration for the firearm related charges followed by terms of supervised release of not more than three years, fines of up to $250,000.00, and $100.00 special assessments. For the drug distribution charge Mr. McDermon faces a term of incarceration of twenty years, a fine of $1,000.000.00, a term of supervised release not to exceed three years and a special assessment of $100.00 dollars.

Probation Officer George Neal in his Pre-Sentence Investigation Report has identified a

1

sentencing range of 63 to 78 months of incarceration pursuant to the United States Sentencing Commission Guideline Manual. The range is based on a final Offense Level of 25 and a Criminal History Category II.

### ARGUMENT IN SUPPORT FOR A FOR A SENTENCE OF 51 MONTHS OF INCARCERATION

Mr. McDermon is before the Court after committing a series of very serious and inexplicable criminal offenses. The number of weapons that he brought into the District was completely out of character and inconsistent with the general law abiding life that he has led. As the PSR indicates, Mr. McDermon does have a prior criminal history, but it consists of traffic and financial criminal offenses. Mr. McDermon also has a documented work history in various fields which adds to the mystery as to why he would repeatedly engage in such illegal behavior.

Clearly, Mr. McDermon did not give a single thought to the potential consequences of his criminal actions. He certainly did not think of his wife and daughter who are struggling to come to terms with the forced separation, the anguish and humiliation of seeing a husband and father in a Federal Court charged with eleven separate and very serious crimes. In bringing illegal weapons into the city Mr. McDermon showed a complete disregard for the city of Washington and its citizens. A minimum of thoughtfulness would have made him understand and acknowledge that guns along with drugs are the last thing that this city needs. Unfortunately and inexplicably, Mr. McDermon did not make the connection that the citizens of Washington suffer immeasurably from the abundance and use of illegal firearms.

Incarceration at the District of Columbia Jail has given Mr. McDermon, more than adequate time to reflect on the dangerous consequences that his criminal actions could have had on the city.

Moreover, he has come to the painful acknowledgment that at the relatively young age of 45 he maybe incarcerated into his early fifties. Mr. McDermon knows that unlike previous sentencing hearings, this time when he appears before the Court he will be sentenced to a substantial period of incarceration.

Incarceration has been a very sobering experience for Mr. McDermon. Mr. McDermon never envisioned that he would spend a significant period of time at the District of Columbia Jail at this point in his life. Now the freedom which he took for granted and never thought about has turned into a distant memory and future. The District of Columbia Jail has been an unfamiliar and alien environment for Mr. McDermon. The District of Columbia Jail is an oppressive environment that can be a real shock to anyone who is unfamiliar with incarceration. Up until his current incarceration Mr. McDermon's previous imprisonment amounted to no more than thirty days.

The most depressing and painful aspect of his incarceration has been the physical separation from his wife and daughter. Seeing that family visitations are limited and separated by thick plexi glass has been very depressing. Because of that Mr. McDermon has resisted his daughter's request to see him under those circumstances. His sadness is exacerbated by the fact that he will not be present to help raise his daughter as she grows and matures into a young woman. During his incarceration he has become keenly aware of the long term consequences that his separation will have on his wife and daughter. By all indications Mr. McDermon has been a very dedicated father to his teenage daughter and he wants to continue to support her but acknowledges that difficulties of doing so from prison.

Mr. McDermon accepts that he is responsible for his present circumstances and for the long term incarceration that awaits him. As a result, Mr. McDermon decided early in the pendency of

his case to enter a guilty plea. Mr. McDermon wanted to take responsibility for his illegal conduct and not obligate the government to prove his guilt before a jury. Mr. McDermon also wanted to let the Court know that he didn't wish to proceed with the case because he was in fact guilty of the charged offenses. While his case has been pending Mr. McDermon's foremost concern has been the welfare of his wife and daughter. To this end he has always consulted with his wife regarding how to forge ahead out of this very painful predicament so that their marriage and family can remain strong. For reasons set forth below, undersigned requests that the Court sentence Mr. McDermon to a term of incarceration of 51 months.

I.  **THE SENTENCING FRAMEWORK PURSUANT TO <u>UNITED STATES v. BOOKER</u>, 18 U.S.C. § 3553(a), 18 U.S.C. § 3582 AND 18 U.S.C. § 3661 ALLOW A SENTENCE BELOW THE GUIDELINE RANGE OF 63 -78 MONTHS OF INCARCERATION**

In <u>United States v. Booker</u>, 125 S. Ct. 738 (2005), the Supreme Court held that the mandatory sentencing guidelines as they were applied were unconstitutional. The Court based its holding on the fact that judges, not juries, were allowed to decide the facts which determined the maximum sentences to which defendants were subject and that the burden of proof used was a preponderance of the evidence instead of beyond a reasonable doubt. Having found the mandatory guidelines as applied to be unconstitutional, a different majority of the Court decided that the proper remedy was to sever and excise 18 U.S.C. § 3553(b)(1), which required mandatory application of the guidelines, and § 3742(e), which governed appellate review in a manner no longer relevant to advisory guidelines, thus making the guidelines advisory. <u>Id</u>. at 756-57.

The Court in <u>Booker</u> held that judges are required to "take account of the Guidelines <u>together with</u> other sentencing factors," and to "consider" the guidelines along with all the other

required factors (emphasis added). But there is no requirement that a sentence be within the guidelines range, and a number of other statutory factors, which are mandatory, must be followed by the court.

The Second Circuit in United States v. Crosby, 397 F.3d 103 (2005) provides a framework for sentencing pursuant to Booker that takes into account the sentencing guidelines and the sentencing statutory mandates enumerated in 18 U.S.C. § 3553(a) After a determination of the guideline range the Sentencing Court has "[t]he duty imposed by subsection 3553(a)(4), to "consider" it along with all of the factors listed in section 3553(a) Id. 112. This position is reasonable and stands in contrast to the Sentencing Court in United States v. Wilson, 350 F. Supp. 2nd 910, 912 which would continue to give the guidelines "heavy weight".

Thus, pursuant to Booker, courts are now required to impose a sentence "sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2)" of 18 U.S.C. § 3553(a). These purposes include the necessity

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct;

( C) to protect the public from further crimes of the defendant; and

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

Subsections (A) through (D) of § 3553(a) (2) thus highlight the primary purposes of sentencing, including the seriousness of the offense, the need to afford deterrence and protect the public, and the need for rehabilitative or correctional treatment. See also § 3551 (defendant "shall

be sentenced in accordance with the provisions of this chapter so as to achieve the purposes set forth in subparagraphs (A) through (D) of section 3553(a) (2) . . . "). In determining a sentence consistent with these goals, the court must consider a number of factors, see § 3553(a) (1) - (7), including "the nature and circumstances of the offense and the history and characteristics of the defendant" as well as the sentencing guidelines and policy statements issued by the Sentencing Commission. 18 U.S.C. § 3553(a) (4) & (5). A court may consider all "information concerning the background, character, and conduct of a person convicted of an offense," 18 U.S.C. § 3661.

a.  **APPLICATION OF 18 U.S.C. § 3553(a)(1) AND THE SENTENCING GUIDELINES**

18 U.S.C. § 3553(a)(1) directs the Court to look at Mr. McDermon's history and nature and circumstance of the offense. The nature of the charged offenses, illegal possession and transfer of firearms and distribution of cocaine, are ones that are inconsistent with Mr. McDermon's overall history and, in particular, criminal history. This is clearly the case since his prior convictions are in essence theft related charges. There is no question that the nature and circumstances of the possession and the transfer of firearms are extremely serious and warrant a punitive sanction. The fact that he brought extremely lethal rifles to Washington does merit consideration for a severe sentence. A Base Offense Level of 20, pursuant to U.S.S.G. § 2K2.1(a)(4)(B) adequately corresponds and satisfies the need for a significant punitive sanction. The additional 4 points, per U.S.S.G. § 2K2.1(b)(1)(B), is a justifiable enhancement given the numerous weapons that Mr. McDermon brought to Washington.

However, the nature of Mr. McDermon's criminal offense in the context of his history and the overall criminal conduct shows that a strict guideline sentence of 63 to 78 months, is unreasonable. Specifically, Mr. McDermon's final guideline range was enhanced four points

pursuant to U.S.S.G. § 2K2.1(b)(5), which results in a final Base Offense Level of 28 and a sentencing range of 63 to 78 months before the adjustment for acceptance of responsibility.

That final range is unreasonable in the context of the primary objective of the Government's sting operation and Mr. McDermon's criminal conduct, which was predominantly the illegal purchase, transportation and sale of guns. The distribution of cocaine was never the primary focus of the sting operation. This conclusion is supported by the absence of any video taped conversations regarding the purchase or sale of cocaine. In each video taped conversation the only topic that is discussed and negotiated is Mr. McDermon's ability to obtain and bring to Washington various types of firearms.

The latter proposition is further supported by two investigation reports that were completed by the police after the May 10th and May 19th transactions which involved both the sale of firearms and cocaine.[1] Both offenses were charged in the indictment. However, its clear from the investigation reports that the sale of cocaine was a collateral afterthought to the sale of the guns. According to the May 10th investigation report, Mr. McDermon is only asked about selling cocaine only after he provides the guns to the undercover. In response to the cocaine question, Mr. McDermon responds by saying that his "friend had gotten cocaine in Cleveland". When a request for a half ounce of cocaine is made Mr. McDermon responds by saying he "would ask his friend". Which Mr. McDermon does.

Mr. McDermon then returns to the undercover and repeats that his "friend had half and ounce but didn't have any way to weigh it out" and that "his friend could sell [the undercover] a hundred

---

[1]  Undersigned is including with this memorandum the May 9th and May 19th reports, respectively as Exhibits 1 and 2.

dollars worth"  Eventually, Mr. McDermon does obtain powder cocaine in the amount of two hundred dollar.  However, Mr. McDermon obtained the cocaine only after he left the undercover vehicle on two occasions to consult and negotiate with another person sitting in vehicle who did have the cocaine that the undercover wanted to purchase.  Moreover, at no time does Mr. McDermon make the claim that he has a cocaine source or supplier in Cleveland.  Throughout his interaction with the undercover Mr. McDermon always claims that he can get firearms from a source in Cleveland but he never makes similar claims regarding cocaine.

Undersigned counsel does not quarrel with the government's position regarding Mr. McDermon's irresponsibility, and short sightedness in bringing extremely lethal firearms to the District of Columbia.  There is no excuse or justification for that behavior given the problems that plagued the District of Columbia with the countless assaults that are committed with the use of illegal firearms.  However, Mr. McDermon is properly punished when he is assessed a Base Offense Level of 20.  He is further and justly enhanced when he is assessed an additional 4 points for bringing in more than twenty firearms into the District.

However, the same principles of fairness and justice with respect to the gun enhancement are missing when he is enhanced 4 points for possessing a firearm while committing another felony - the Distribution of Cocaine.  Factually, the actual illegal possession of the firearm on May 19th, and charged as count 9, is a wholly separate and distinct criminal event from the distribution of cocaine. A careful reading of U.S.S.G § 2K2.1(b)(5) contemplates two criminal events that are intrinsically related since the enhancement is proper when the "defendant used or possessed any firearm or ammunition in <u>connection</u> with another felony offense" (emphasis added)  When Mr. McDermon enters the Undercover car, he does so with the intention of completing a deal that had been

8

previously arranged, which is only for the delivery of firearms. Mr. McDermon completes that illegal transaction and the other felony offense, the distribution of cocaine, is only raised afterwards and by the undercover.

Accordingly, Mr. McDermon enters into a singular, discreet agreement for the purchase/sale of cocaine after he satisfies the elements for possessing the firearm. The sale of the cocaine is not connected to the prior and thoroughly discussed agreement for firearms. The investigation report for May 19th, also shows the extent and extensive nature of the negotiations with respect to the firearms but not the cocaine. When Mr. McDermon's association and negotiations for weapons with the undercover are viewed historically along with his efforts in obtaining the weapons in Cleveland and how he obtains the cocaine from Fred Bush, the four point enhancement is unreasonable. Furthermore, the factual history of the two criminal events, counts 8 and count 10 at best, marginally, satisfy the requirements for the application of the enhancement pursuant to U.S.S.G. § 2K2.1(b)(5).

## **CONCLUSION**

Pursuant to offense 18 U.S.C. § 3553(a)(1)(2)(A) Mr. McDermon's sentence must reflect the seriousness of the offense. There is no question that Mr. McDermon violated the law, not just once but on numerous occasions, and that the Court has to address his conduct. However, the seriousness of the offense has to take into account and result in a sentence that "promote[s] respect for the Law and provide[s] just punishment".

18 U.S.C. § 3553(a)(2)(D) directs the Court to consider Mr. McDermon's sentence in light of the educational or vocational training that will support his rehabilitation and education. Mr. McDermon is in need of rehabilitation. His foremost need is treatment for a gambling addiction that was a significant and motivating factor that caused him to behave so unlawfully and irrationally. He

also needs vocational training in order to be a productive citizen when he leaves prison. Mr. McDermon acknowledges that he needs help and he wants to be productive during his incarceration.

A sentence of 51 months of incarceration serves the various goals of sentencing. Fifty one months of incarceration is substantial and adequately punitive. His removal from society certainly will have the effect of deterring future criminal and instill in Mr. McDermon a respect for the law. While he is incarcerated Mr. McDermon can address his gambling addiction and pursue and make the most of the educational and vocational opportunities available in prison.

Based on these reasons undersigned requests that the Court to sentence Mr. McDermon pursuant to a Base Offense Level of 21 and Criminal History Category II, which yields a sentencing range of 41-51 months of incarceration. Given the seriousness of the criminal conduct undersigned further requests that the Court sentence him to the high end.

Respectfully submitted,

A.J. Kramer
Federal Public Defender


_____/s/_____
Carlos J. Vanegas
Assistant Federal Public Defender
625 Indiana Ave., N.W., Suite 550
Washington, D.C. 20004
(202) 208-7500